UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIE CLAUDINE JOSEPHINE DUGUE VIL,

Plaintiff,

-against-

GENERAL MOTORS LLC,

Defendant.

25-CV-7881 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Pro se Plaintiff Marie Claudine Josephine Dugue Vil brings this products liability action against Defendant General Motors LLC ("General Motors" or "GM"), alleging that defects in her 2020 Buick Encore caused her vehicle to burst into flames and gravely injure her after a collision. Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. In light of Plaintiff's pro se status, the Court determines that she has sufficiently pleaded her negligent design and manufacturing claims, as well as her strict products liability claims. However, because Plaintiff does not specifically identify how GM failed to warn her of the alleged defects, the Court dismisses her failure to warn claim. Nevertheless, the Court grants Plaintiff leave to replead that claim by **September 24, 2026**. Accordingly, the Court grants in part and denies in part Defendant's Motion to Dismiss, and grants Plaintiff leave to replead her failure to warn claim.

## BACKGROUND

The facts are taken from the Amended Complaint and assumed to be true for the purpose of this motion. ECF No. 10 ("AC"); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (assuming facts from the complaint and supporting documents "to be true in reviewing a Fed. R. Civ. P. 12(b)(6) dismissal"). Because Plaintiff is pro se, the Court may also

"consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018).

Plaintiff Marie Claudine Josephine Dugue Vil is a resident of Pomona, New York. AC at 1 ¶ 1. On or about August 5, 2022, Plaintiff entered into a written agreement with non-party MB WP Motors, LLC, for Plaintiff to purchase a used 2020 Buick Encore automobile (the "Encore"), which was manufactured by Defendant General Motors. *Id.* at 2 ¶ 1. The Encore's vehicle identification number ("VIN") was KL4CJESBXLB026016. *Id.* Plaintiff was the second owner of the Encore, which was still covered by a five-year warranty during the period at issue. ECF No. 17 ("Pl. Aff.") ¶ 5.

Plaintiff alleges that at the time of the sale, there were two official National Highway Traffic Safety Administration ("NHTSA") safety recalls affecting the 2020 Buick Encore. AC at 2 ¶ 6. The first recall, announced on September 3, 2020, was based on potentially missing front seat rear attachment bolts, which could cause the front seat to move. *Id.* at 3 ¶ 6. The second recall, announced on October 29, 2020, was based on "[m]issing bolts on the start-stop accumulator endcap," which could cause a "transmission fluid leak" and heightened risk of fire. *Id.*

On October 30, 2022, Plaintiff was driving her Encore on the highway in Rockland County, New York, when another motorist struck the Encore. *Id.* at 3 ¶ 7. Plaintiff alleges that she and her father "were properly restrained, with the seat belt, shoulder restraint, and airbag functioning as intended at the time of the accident." Pl. Aff. ¶ 16. Upon impact, Plaintiff's Encore "exploded into an engulfing fire," which destroyed the vehicle and all personal

possessions within it. AC at 3 ¶ 8. Plaintiff has been unable to recover the value of her personal possessions, in an amount totaling $15,100, from her insurance company. *Id.*

Plaintiff suffered "major medical trauma and severe bodily injuries" as a result of the accident, including the fracture of multiple bones, ligament tears, and "acute stress disorders." *Id.* at 3–4 ¶ 9. Plaintiff also sustained damage to her lungs from smoke inhalation, which necessitated intubation, and burns on her wrist and legs. Pl. Aff. ¶¶ 19, 21. Some of Plaintiff's injuries are permanent. AC at 4 ¶ 9. Plaintiff has undergone many surgeries and spent months hospitalized. *Id.* at 4 ¶ 10. Due to the prolonged recovery, Plaintiff also lost wages and other employee benefits, including her medical coverage. *Id*. Plaintiff had to obtain Medicaid coverage until she recovered to the point that she could return to work. *Id.* Additionally, Plaintiff's father, a passenger in the Encore, was severely injured. *Id.* at 3 ¶ 7.

Just under three years after the collision, on September 22, 2025, Plaintiff initiated this action against Defendant General Motors. ECF No. 1. On January 5, 2026, Defendant General Motors moved to dismiss the Complaint. ECF No. 8.

On January 23, 2026, Plaintiff filed an Amended Complaint. AC. The Amended Complaint added MP WP Motors, LLC ("MP WP Motors") as a Defendant. AC at 1 ¶ 3. Plaintiff alleges that General Motors and MP WP Motors "knew or should have known of the [Encore's] defect[s] and failed to adequately warn consumers or ensure timely repairs." *Id.* at 4 ¶ 12. Specifically, Plaintiff brings against Defendant General Motors three claims: negligence, strict products liability, and failure to warn. *Id.* at 4–5 ¶¶ 1–7. Plaintiff seeks compensatory damages against General Motors in excess of $2,000,000 "for medical expenses, pain and suffering, loss of property, and permanent disability." *Id.* at 7 ¶ 1. Plaintiff also brought negligence (failure to

warn), breach of express and implied warranties, and fraudulent concealment claims against MP WP Motors. *Id.* at 5–7 ¶¶ 1–10.

Because this tort action proceeds in this Court under diversity jurisdiction, and both Plaintiff and MB WP Motors, LLC are citizens of the state of New York, AC at 1 ¶¶ 1, 3, the Court required Plaintiff to show cause regarding why the Court should not dismiss the case for lack of subject matter jurisdiction. ECF No. 21. In response, Plaintiff requested dismissal of the non-diverse defendant MB WP Motors, LLC, which the Court granted. ECF No. 24. Accordingly, Plaintiff proceeds with only her claims against General Motors.

In light of Plaintiff's Amended Complaint, the Court denied General Motor's first Motion to Dismiss as moot. ECF No. 14. On February 12, 2026, General Motors filed the present Motion to Dismiss the Amended Complaint. ECF No. 15. On March 2, 2026, Plaintiff opposed the motion. ECF Nos. 17–18. On March 17, 2026, Defendant filed its reply. ECF No. 19 ("Reply").

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

Pro se complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation omitted). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (internal citation omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Because Plaintiff is proceeding pro se, the Court must liberally construe her Complaint and interpret it "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal citation omitted). "Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations." *Blue v. City of New York*, No. 16-CV-9990 (VSB), 2018 WL 2561023, at *4 (S.D.N.Y. June 4, 2018) (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

**DISCUSSION**

In this diversity action, the Court will apply the substantive law of New York. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 73 (1938). Here, "[t]he New York Court of Appeals has extended liability to vehicle manufacturers in matters often referred to as 'second collision' cases." *Pesce v. Gen. Motors Corp.*, 939 F. Supp. 160, 162 (N.D.N.Y. 1996) (citing *Tiner v. General Motors Corp.*, 909 F. Supp. 112, 116 (N.D.N.Y. 1995)). "These cases involve defects which the plaintiff

does not claim caused the accident itself, but rather enhanced or aggravated plaintiff's injuries." *Id.* (citing *Bolm v. Triumph Corp.*, 33 N.Y.2d 151, 159 (1973)).

"Under New York law, a plaintiff pursuing . . . products-liability theories[, including negligence and strict liability,] must establish that the product was defective and that the defect was a substantial factor in causing the plaintiff's injury." *Wilson-Wolf v. Tesla Vehicles*, No. 22-CV-10066 (NSR), 2026 WL 84499, at *3 (S.D.N.Y. Jan. 12, 2026). According to the New York Court of Appeals, "a manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended." *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 44 (2d Cir. 2002) (Sotomayor, J.) (quoting *Micallef v. Miehle Co.*, 39 N.Y.2d 376 (1976)).

Here, the Court first concludes, after liberally construing Plaintiff's pro se Amended Complaint, that Plaintiff has sufficiently stated defective design and manufacturing claims under both negligence and strict liability theories. However, the Court determines that Plaintiff has failed to allege a failure to warn claim and dismisses this claim with leave for Plaintiff to replead.

## I. Defendant's Motion to Dismiss the First Cause of Action (Negligent Design and Manufacturing) Is Denied

As her first cause of action against GM, Plaintiff alleges that GM was negligent in its "design, manufacture, and maint[enance]" of the Encore. AC at 5 ¶ 1. "Three types of defects are recognized under New York law: (1) design defects; (2) manufacturing defects; and (3) defective or inadequate warnings." *Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. 14-CV-1095 (SJF) (AKT), 2016 WL 11264722, at *17 (E.D.N.Y. Aug. 12, 2016), *report and recommendation adopted*, 2016 WL 8671839 (E.D.N.Y. Sept. 16, 2016). Accordingly, the Court considers Plaintiff's negligent design and defective manufacturing claims in turn.

**a. Plaintiff Sufficiently States a Negligent Design Claim**

Plaintiff has plausibly alleged that Defendant negligently designed the Encore in a manner that caused or exacerbated her injuries. "A claim premised upon a defective design theory requires that Plaintiff show: (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing Plaintiff's injury." *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 888 (E.D.N.Y. 2018), *adhered to on reconsideration*, No. 18-CV-0334 (SJF) (SIL), 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019) (collecting cases); *see also Michael v. Gen. Motors LLC*, 790 F. App'x 275, 277 (2d Cir. 2019) (stating that "where a plaintiff claims that the alleged defects did not cause the car crash itself, he must show how the alleged defect aggravated his injuries").

Nevertheless, "[t]he New York Court of Appeals has held that a plaintiff's failure to prove why a product malfunctioned does not necessarily prevent a plaintiff from showing that the product was 'defective.'" *Jarvis*, 283 F.3d at 44 (citing *Codling v. Paglia*, 32 N.Y.2d 330 (1973)). In *Codling*, the New York Court of Appeals stated that

> [w]hile the burden is upon the plaintiff to prove that the product was defective and that the defect existed while the product was in the manufacturer's possession, plaintiff is not required to prove the specific defect, especially where the product is complicated in nature. Proof of necessary facts may be circumstantial. Though the happening of the accident is not proof of a defective condition, a defect may be inferred from proof that the product did not perform as intended by the manufacturer . . . .

32 N.Y.2d at 337. *See also Halloran v. Va. Chemicals Inc.*, 41 N.Y.2d 386, 388 (1977) (stating that "if plaintiff has proven that the product has not performed as intended and excluded all causes of the accident not attributable to defendant, the fact finder may, even if the particular defect has not been proven, infer that the accident could only have occurred due to some defect in the product or its packaging").

Here, Plaintiff has alleged two theories of liability. First, Plaintiff alleges in her AC that the Encore was subject to "two official NHTSA safety recalls" relating to defects in the vehicle (which was under warranty at the time) that caused the Encore to be engulfed in flames and her seat to push forward, when the car was hit. AC at 2 ¶ 6. Plaintiff specifically alleges that the recalls were related to defects that caused improper front seat movement and a combustible transmission fluid leak. *Id.* at 2–3 ¶ 6. Second, Plaintiff asserts that her claims do not hinge on the alleged recalls alone, and that "[t]he fact that a particular vehicle was not included in a recall does not establish that it was free from the alleged defect."[1] ECF No. 18 ("Opp.") at 2.

Defendant's only substantive argument raises a factual dispute that must be disregarded at this motion to dismiss stage. Defendant General Motors contends that the alleged recalls are "not applicable to [Plaintiff's] vehicle." ECF No. 15-1 ("MTD") at 1. Specifically, Defendant states that "[r]ecalls are linked to a vehicle's VIN" and "[e]ntry of the subject vehicle's VIN into NHTSA's website, Buick's website, and GM's website establish that the subject 2020 Buick Encore was not subject to either of these recalls." *Id.* at 3.

At the motion to dismiss stage, when "presented with matters outside the pleadings, Rule 12(b) [generally] afford[s] two options." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). Courts may either "exclude[] the extrinsic documents" or "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery[.]" *Id.* Additionally, there are a few exceptions—documents that courts may consider at the motion to dismiss stage without conversion to a summary judgment motion—including attachments to

---

[1] Plaintiff cites this quoted language as having originated from *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1164 (C.D. Cal. 2010). The Court was unable to locate this language in the cited opinion. *See* Reply at 1 (Defendant noting that "none of the quotes cited by Plaintiff are accurate, and all of her case citations are incorrect").

the complaint, documents incorporated into the complaint by reference, documents that are integral to the complaint, and facts of which the Court can take judicial notice. *See id.* at 153.

However, the alleged recall information does not raise or qualify for any of these exceptions. Defendant's only justification for the Court to consider these extraneous facts is that "[r]ecalls are publicly available and specific to a vehicle's VIN, so it is well within the Court's discretion to consider whether a recall applies to a specific vehicle in its analysis of GM LLC's dismissal motion." Reply at 2. This argument fails. The fact alone that a document is publicly available does not make extraneous materials proper to consider at the motion to dismiss stage. Instead, the Court may only consider at the motion to dismiss stage "publicly available documents *of which it may take judicial notice*." *Mule v. Dep't of Educ. of City of New York*, 797 F. Supp. 3d 9, 40 n.9 (E.D.N.Y. 2025) (emphasis added).

However, even if the Court were to take judicial notice of the VIN-based search for recalls on the NHTSA website, the Court may only "take judicial notice of the fact that . . . judicially noticeable public records contained certain information, without regard to the truth of their contents." *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362, 375 (S.D.N.Y. 2021) (quoting *New York ex rel. Khurana v. Spherion Corp.*, No. 15-CV-6605 (JFK), 2017 WL 1437204, at *3 (S.D.N.Y. Apr. 21, 2017)). *See also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (stating that the Second Circuit has "previously held that it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents"); *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (concluding that a district court did not abuse its discretion when taking "judicial notice of the documents for the purpose of establishing that the information was publicly available; it did not consider the documents for their truth"). Therefore,

even if the Court did take judicial notice of the NHTSA search, at most, the Court would only consider that the search did not show that the Encore was listed as being subject to a recall on that particular website—not that the Encore was or was not actually subject to a recall. Additionally, the Court would also have to take judicial notice of the fact that the NHTSA website states that its data are not necessarily complete; that some recalls are not listed on the website; and that there may be announced safety recalls for which not all VINs have been identified. *See* NHTSA, *Check for Recalls*, https://www.nhtsa.gov/recalls#vin (last visited Sep. 2, 2026) (stating that a VIN search will not show a "safety recall that has already been repaired" and "[s]ome recently announced safety recalls for which not all VINs have been identified"). Therefore, the website does not definitively establish that Plaintiff's Encore was free from a defect that would have made it subject to a safety recall. That is an issue best left to discovery.

Accordingly, the Court declines to accept Defendant's invitation to dismiss the complaint on the basis of data found, or not found, on the NHTSA website, which is extraneous to the complaint. As this is a motion to dismiss, the Court must construe Plaintiff's allegations regarding the Encore's recalls as true.

Additionally, Plaintiff alleges that even if the Encore was not subject to a safety recall, her Encore may still have been defective, given that her accident resulted in the same types of injuries and damages that were attributable to the factors motivating the recalls—the missing bolts in the start-stop accumulator endcap and the missing rear attachment bolts on the front seat. *See* Opp. at 1 ("The absence of Plaintiff's VIN from a recall list does not defeat a plausible defect claim[.]"); Pl. Aff. ¶ 9 ("Whether the [Encore's] defect is identical to, related to, or independent of the recall campaigns is a matter for discovery[.]"). Plaintiff alleges that her

"[a]bdominal trauma indicates seat movement / seat-track failure," and likewise, the fact that the Encore caught fire is consistent with a potential defect. Pl. Aff. ¶¶ 23(a), 28. The Court agrees.

These facts are sufficient to state a negligent design claim. Plaintiff has alleged specific design defects by identifying the specific defects that led to safety recalls and alleging that her accident resulted in the same types of damage expected from one of the recalled vehicles. Plaintiff has alleged that these defects—specifically, the movement of the front seat and the vehicular fire—damaged her personal belongings and caused her fractures, burns, and stress disorders. *See* AC at 3–4 ¶¶ 8–11; Pl. Aff. ¶¶ 19–23. Therefore, Plaintiff has sufficiently alleged the elements of the Encore's design posing a substantial likelihood of harm and that the design caused Plaintiff's injury.

Additionally, although Plaintiff does not explicitly allege the second element of negligent design—that it was feasible to design the Encore in a safer alternative manner, *see DiBartolo v. Abbott Lab'ys*, 914 F. Supp. 2d 601, 622 (S.D.N.Y. 2012)—the Amended Complaint "contains sufficient factual allegations for the Court to infer the existence of a design defect," *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 131 (N.D.N.Y. 2022); *see id.* at 130 (determining that plaintiffs stated a design defect claim for a pharmaceutical, even though "they [did] not allege a specific alternative," because "it is plausible that defendants, as its designers, would be in the sole possession of any alternative designs"). Specifically, Plaintiff alleges that the Encore was subject to safety recalls relating to missing bolts. AC at 2–3 ¶ 6. Read as a whole, the Amended Complaint sufficiently alleges that the safer, alternative design of the Encore—one that included the missing bolts—was feasible.

Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's negligent design claim.

**b. Plaintiff Sufficiently States a Negligent Manufacturing Claim**

For similar reasons, Plaintiff has successfully stated a negligent manufacturing claim. "The elements of a manufacturing defect claim which plaintiff must prove are: (1) a defect which existed at the time the product left the defendant's control; (2) a causal connection between the defect and the injury; and (3) damages." *Amica Mut. Ins. Co. v. WHAC LLC*, 447 F. Supp. 3d 6, 10 (W.D.N.Y. 2020) (citing *Angona v. City of Syracuse*, 987 N.Y.S.2d 761 (4th Dep't 2014)).

Generally, "[t]o successfully plead such a claim, the complaint must allege both that 'a *specific* product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and that 'the defect was the cause of plaintiff's injury.'" *Wilson-Wolf*, 2026 WL 84499, at *3 (quoting *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001)) (emphasis added). "[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Colon*, 199 F. Supp. 2d at 85.

A plaintiff may allege both design and manufacturing defect claims in the alternative. Although "a plaintiff's recovery for a manufacturing defect is (in most circumstances) mutually exclusive with recovery for a design defect," in light of the fact that "an ordinary customer will likely face difficultly in determining whether a product's defect originated in its design or in its manufacture," at the motion to dismiss stage, "[a] plaintiff is not asked to pinpoint the origin of the defect—*i.e.*, in the design or in the manufacture—so long as she can articulate a description of the defect." *Koublani v. Cochlear Ltd.*, No. 20-CV-1741 (DRH) (AYS), 2021 WL 2577068, at *13 (E.D.N.Y. June 23, 2021) (internal citations and quotation marks omitted).

Additionally, "[w]ith respect to a manufacturing defect, the specific defect need not be identified where the product is, as here, complex: proof of the necessary facts may be

circumstantial in nature and a defect may be inferred by proof that the product did not perform as intended by the manufacturer." *Amica Mut.*, 447 F. Supp. 3d at 10. This "circumstantial-defect doctrine" is "narrow." *Wilson-Wolf*, 2026 WL 84499 at *4. "[A] plaintiff proceeding without identifying a specific flaw must show that the product 1) did not perform as intended and 2) must exclude all other reasonable causes of the accident not attributable to the defendant." *Id.* (first citing *Speller ex rel. Miller v. Sears, Roebuck & Co.*, 100 N.Y.2d 38, 43–44 (2003); and then *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490, 510–11 (E.D.N.Y. 2019)). This "burden is demanding, particularly in the automotive context, where vehicles are routinely involved in accidents in the absence of any defect." *Id.* (internal quotation marks and citation omitted). "Accordingly, a plaintiff must do more than speculate about a product defect; she must affirmatively negate other plausible causes of the accident." *Id.*

Here, as described above, Plaintiff alleges that her Encore was subject to two safety recalls related to separate defects that relate directly to what happened when her Encore was hit: the car burst into flames and a passenger in the car suffered injuries that were consistent with the forward movement of the front seat. *See supra* Section I(a). Therefore, Plaintiff alleges a causal connection between the two defects she identifies and her injury. Plaintiff also clearly alleges damages, including the destruction of her Encore, other personal possessions, and serious bodily harm. *See* AC at 3–4 ¶¶ 8–10. Therefore, Plaintiff has sufficiently pleaded the elements of a negligent manufacturing claim.

Beyond alleging these specific defects, Plaintiff further satisfies the circumstantial-defect doctrine, by alleging that the Encore did not perform as expected—instead, it burst into flames upon impact—and affirmatively negating other plausible causes of her injuries. *See Wilson-Wolf*, 2026 WL 84499 at *4. For example, Plaintiff alleges that her abdominal trauma is consistent

with "seat movement / seat-track failure," especially in light of the fact that Plaintiff was "restrained properly." Pl. Aff. ¶¶ 23, 28*; see also id.* ¶ 16 (stating that "Plaintiff and her elderly father . . . were properly restrained, with the seat belt, shoulder restraint, and airbag functioning as intended at the time of the accident").

Therefore, the Court denies Defendant's Motion to Dismiss Plaintiff's negligent manufacturing claim.

## II. Defendant's Motion to Dismiss the Second Cause of Action (Strict Products Liability) Is Also Denied

For her second cause of action against GM, Plaintiff brings strict products liability claims. She alleges that the 2020 Buick Encore "was defective in design and/or manufacture," which rendered the Encore "unreasonably dangerous and directly caused Plaintiff's injuries." AC at 5 ¶¶ 4–5.

"Under New York law, which applies in this diversity action, negligence claims under the three theories, manufacturing defect, failure to warn, and design defects, are 'functionally equivalent' to their strict liability counterparts." *Wilson-Wolf*, 2026 WL 84499, at *3 (quoting *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 887 (E.D.N.Y. 2018)) (collecting cases); *see also DiBartolo*, 914 F. Supp. 2d at 620 (stating that "the analysis under strict liability and negligent design defect is identical" (quoting *Steinman v. Spinal Concepts, Inc.*, No. 05–CV–774 (WMS), 2011 WL 4442836, at *8 (W.D.N.Y. Sept. 22, 2011))).

"The Court will therefore consider Plaintiff's negligence and strict products liability claims together." *Wilson-Wolf*, 2026 WL 84499, at *3; *see also Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 406 (S.D.N.Y. 2013) (citation omitted) ("New York courts generally consider strict products liability and negligence claims to be functionally synonymous."). Accordingly, for the reasons stated in Section I above, the Court denies Defendant's Motion to

Dismiss with respect to Plaintiff's defective design and manufacturing claims, arising both under negligence and strict liability theories.

## III. Defendant's Motion to Dismiss Plaintiff's Third Cause of Action (Failure to Warn) Is Granted, But With Leave to Replead

Plaintiff has failed to sufficiently state her third cause of action, a failure to warn claim against GM, alleging that GM "failed to adequately warn Plaintiff of the known risks associated with the [Encore's] defects." AC at 5 ¶ 6. Under New York law, "a failure to warn claimant must show (1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm." *Colon*, 199 F. Supp. 2d at 84. "In New York, there is a presumption that a user would have heeded an adequate warning if one had been provided and that the injury would not have occurred." *Wilson-Wolf*, 2026 WL 84499, at *5 (citing *Colon*, 199 F. Supp. 2d at 85).

"The adequacy of a warning is often a question of fact." *Id.* at *4. However, "[a] failure-to-warn claim cannot proceed where the plaintiff does not identify a specific warning deficiency, where the risk was open and obvious, or where there is no evidence that an additional warning would have altered the plaintiff's conduct or prevented the injury." *Id.* Indeed, "a claim premised upon a failure to warn theory should be dismissed in the event a plaintiff fails to plead facts establishing how or why the warning provided was inadequate." *Oden*, 330 F. Supp. 3d at 891.

Here, Plaintiff makes no specific allegations regarding Defendant's alleged failure to warn. Rather, Plaintiff alleges in a conclusory fashion that GM "knew or should have known of the defect and failed to adequately warn consumers or ensure timely repairs." AC at 4 ¶ 12; *see also id.* at 5 ¶ 6 ("Defendant failed to adequately warn Plaintiff of the known risks associated with the defects."). Plaintiff fails to "identify a specific warning deficiency" and does not allege any non-conclusory facts "that an additional warning would have altered the plaintiff's conduct

or prevented the injury." *Wilson-Wolf*, 2026 WL 84499, at *4. Indeed, Plaintiff does not even address her failure to warn claim in her opposition papers. *See* Opp.; Pl. Aff. Therefore, Plaintiff has failed to state a failure to warn claim.

However, given the fact that Encores were subject to recall during their warranty period for defects that could lead to the types of damage and injury that resulted from the collision involving Plaintiff's vehicle, the Court cannot say that it would be impossible for Plaintiff to allege a failure to warn claim with non-conclusory allegations. Because she is a pro se plaintiff, she is entitled to special solicitude in this regard. The Court therefore grants Plaintiff an opportunity to amend her complaint to add allegations to support this claim, if she chooses to do so. She must, however, identify a specific warning deficiency.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss. Specifically, the Court DENIES Defendant's Motion with respect to Plaintiff's defective design and manufacturing claims, arising from both negligence and strict liability theories. The Court GRANTS Defendant's Motion with respect to Plaintiff's failure to warn claim, but gives Plaintiff leave to replead that claim. Any amended complaint must be filed by **September 24, 2026**. Plaintiff is **not** to add any new claims or defendants in her amended complaint.

In a separately entered Order, the Court refers this action to Magistrate Judge Reznik for general pretrial, which includes scheduling, discovery, non-dispositive pretrial motions, and settlement.

The Clerk of Court is directed to terminate ECF No. 15.

Dated: September 3, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge